UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

June 22, 2016

LETTER TO COUNSEL

    RE:    *Diana Lynn Combest v. Commissioner, Social Security Administration*;
            Civil No. SAG-15-1098

Dear Counsel:

      On April 16, 2015, Plaintiff Diana Lynn Combest petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Plaintiff's reply memorandum. (ECF Nos. 16, 19, 21). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

      Ms. Combest filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 24, 2012 and January 11, 2012, respectively. (Tr. 205-217). In both claims, she alleged a disability onset date of March 1, 2008, which she later amended to August 5, 2012. (Tr. 22, 44). Her claims were denied initially and on reconsideration. (Tr. 65-86, 87-110). A hearing was held on December 16, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 42-64). Following the hearing, the ALJ determined that Ms. Combest was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 22-36). The Appeals Council denied her request for review, making the ALJ's decision the final, reviewable decision of the Agency. (Tr. 1-6).

      The ALJ found that Ms. Combest suffered from the following severe impairments: status post cervical disc surgery; degenerative disc disease of the cervical and lumbar spine with resulting lumbago and cervicalgia; cervical radiculopathy and stenosis; lumbosacral neuritis; and major depressive disorder, rule out bipolar disorder and anxiety. (Tr. 24-25). Despite these impairments, the ALJ determined that Ms. Combest retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except she can only occasionally climb stairs, ramps, ladders, ropes and scaffolds. The claimant can have only occasional interaction with supervisors and can understand, remember and carryout [sic] simple and detailed instructions.

(Tr. 29). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Combest could perform her past relevant work as a housekeeper, and that, therefore, she was not disabled. (Tr. 36).

Ms. Combest raises two primary arguments on appeal. First, she argues that the ALJ improperly evaluated whether her impairments met or equaled Listing 1.04A by failing to identify the relevant listing, consider material evidence, and apply the proper standard. Pl. Mem. at 8-30. Second, Ms. Combest contends that the ALJ's RFC assessment does not comply with the Fourth Circuit's recent decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). I agree that *Mascio* warrants remand. Both arguments are discussed below.

I will begin with Ms. Combest's unsuccessful argument regarding Listing 1.04A. At step three of the five-step sequential evaluation, the ALJ determined that Ms. Combest's impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26). Her decision specifically addressed physical Listing 1.04. To meet Listing 1.04, a claimant must have a disorder of the spine, resulting in compromise of a nerve root, with either: A) evidence of nerve root compression; B) spinal arachnoiditis; or C) lumbar spinal stenosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Each subsection also delineates symptoms for establishing that severity requirement. *Id.* In her decision, the ALJ stated:

> Specifically, I considered all of the claimant's cervical and lumbar spine impairments under Listing 1.04, and concluded that the claimant does not have the requisite neurological deficits to satisfy the severity requirements of this listed impairment. In particular, the claimant's MRIs only revealed spondylitic narrowing, foraminal stenosis and diffuse disc osteophyte and her medical record is void of evidence indicating nerve root compression characterized by neuro-anatomic distribution of pain, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively. Further, physical examinations revealed the claimant displayed a normal gait without the use of an assistive device. Accordingly, I conclude that the claimant does not have an impairment or combination of impairments that meets or medically equals Listing 1.04.

(Tr. 26) (citations omitted). Ms. Combest argues this finding is deficient in three ways. First, she claims the ALJ "failed entirely to identify Listing 1.04A," despite "ample evidence" of nerve root compression to implicate that subsection. Pl. Mem. at 10. Second, she claims the ALJ mischaracterized the evidence of record pertaining to her MRI findings, and ignored material evidence showing that Ms. Combest's impairments met the requisite element of Listing 1.04A. *Id.* at 13-15; Pl. Reply at 5. Third, she claims "the ALJ was under the mistaken belief that the

inability to ambulate effectively . . . is a requirement of Listing 1.04A," and thus required Ms. Combest to produce more evidence than required. Pl. Mem. at 16. I disagree.

An ALJ must identify the relevant listings and compare each of the criteria to the evidence of the claimant's symptoms when there is "ample evidence in the record to support a determination" that the claimant's impairments meet or equal a listing. *Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986). Remand is not warranted "in circumstances where it is clear from the record which listing or listings . . . were considered," and the court can still "readily determine whether there was substantial evidence to support the ALJ's Step Three conclusion." *Id.*; *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002). In the instant case, the record implicated Listing 1.04; accordingly, the ALJ expressly identified that listing and said that "her medical record is void of evidence" indicative of any of the Listing's subsections. (Tr. 26). It is clear from the opinion that the ALJ considered all three subsections. I also find substantial evidence to support her conclusion, since the ALJ cited Ms. Combest's MRIs, the medical record, and Ms. Combest's physical examinations, as discussed below. (Tr. 26).

Ms. Combest claims the ALJ failed to recognize evidence of nerve root compression that implicated Listing 1.04A. Specifically, she points to two MRI findings: an MRI from January 19, 2011, which revealed, "[d]iffuse disc osteophyte complex partially effacing the ventral CSF, minimally abutting the ventral cord" at the C4-C5 and C5-C6 levels; and an MRI from July 2, 2012, which revealed "diffuse bulging annulus and osteophyte complex indenting the ventral aspect of the thecal sac and the spinal cord" at the C3-C4 and C5-C6 levels.  Pl. Mem. at 14 (citing Tr. 373, 466) (emphasis in original). Ms. Combest also points to her cervical radiculopathy, which the ALJ acknowledged as a severe impairment but did not mention in her 1.04 analysis. Pl. Mem. at 19-20. However, the ALJ analyzed the Listing appropriately.[1] She identified the MRI evidence, stating that "the claimant's MRIs only revealed spondylitic narrowing, foraminal stenosis and diffuse disc osteophyte."  (Tr. 26). Ms. Combest argues that such language "mischaracterizes" the evidence, but I agree with the Commissioner's contention that Ms. Combest has not shown how these findings "amount to a compromise of a nerve root or the spinal cord with evidence of nerve root compression." Pl. Mem. at 13; Def. Mem. at 15 (emphasis in original). Ms. Combest cites *Beauchamp v. Colvin*, Civil No. 14-01899, 2015 U.S. Dist. LEXIS 153842, at *11 (E. D. La. Oct. 20, 2015) where the court found that evidence of a disc protrusion "which abutted the exiting L3 nerve root . . . satisfied the first requirement" of Listing 1.04. Pl. Reply at 3 (citing *Beauchamp*, 2015 U.S. Dist. LEXIS 153842, at *11). However, Ms. Combest omits the fact that the record in *Beauchamp* also contains evidence of "neural canal compromise." *Id.* at *11. She also cites *Brown v. Astrue*, Civil No. 3:11-723 JFA/JRM, 2012 U.S. Dist. LEXIS 88294, at *8 (D.S.C. June 6, 2012), where the court remanded a case "pursuant to Listing 1.04A where a cervical MRI also used the language . . . 'abutting' and 'indentation' in describing the nature of the plaintiff's spinal cord injury." Pl. Reply at 4.  But again, the MRI in that case also showed "spinal cord compression." *Id.* at *23 (emphasis added).

---

[1] The Commissioner rightly points out that cervical radiculopathy "is legally insufficient to meet or equal Listing 1.04A" absent any evidence of nerve root compression. Def. Mem. at 15; *Crowl v. Colvin*, Civil No. BPG-15-446, 2016 U.S. Dist. LEXIS 6896, at *5-6 (D. Md. Jan. 20, 2016) (citing *Smick v. Commr. Soc. Sec.*, 2015 U.S. Dist. LEXIS 87022, 2015 WL 4092449, at *2 (D. Md. July 6, 2015)).

*Diana Lynn Combest v. Commissioner, Social Security Administration*
Civil No. SAG-15-1098
June 22, 2016
Page 4

Such proof of compromise and compression is absent in Ms. Combest's MRI findings. (Tr. 373, 466). Ms. Combest argues the ALJ should have expressly analyzed why such evidence did not support nerve root compression, but the claimant bears the burden of demonstrating that her impairment meets a listing. Pl. Reply at 3; *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013). Given that Ms. Combest has failed to establish nerve root compression, I will not discuss the additional evidence she puts forth pertaining to the elements of Listing 1.04A.[2]

Ms. Combest also claims "the ALJ was under the mistaken belief that the inability to ambulate effectively . . . is a requirement of Listing 1.04A," and thus expected Ms. Combest to produce more evidence than required. Pl. Mem. at 16. The Commissioner contends that "it is reasonable to assume that the ALJ was referring to [L]isting 1.04C," of which the inability to ambulate effectively is a plain requirement. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04; Def. Mem. at 17. I agree with the Commissioner. It is clear that the ALJ synthesized her identification of Listing 1.04 and discussed the listing in its entirety. It is also clear the phrase "resulting in an inability to ambulate effectively" is a prepositional phrase modifying "lumbar spinal stenosis," the triggering symptom of Listing 1.04C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04C; (Tr. 26). The ALJ supported her decision that Ms. Combest does not meet or equal all of Listing 1.04 with substantial evidence, and, for the reasons explained above, this Court will not disturb her conclusion.

Ms. Combest next makes several arguments related to the Fourth Circuit's recent decision in *Mascio*. Specifically, she argues that the ALJ erred by: (1) failing to explain why her finding of a moderate limitation in concentration, persistence, or pace did not translate into additional limitations in her RFC; (2) using boilerplate language that purports to determine her RFC prior to weighing her credibility; and (3) giving little weight to Nurse Practitioner Ketler's opinion. Pl. Mem. at 30-47. I agree that remand is warranted under *Mascio* on one of those grounds.

In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, including the use of boilerplate language that implied the "ability to work is determined first and is then used to determine the claimant's credibility." *Mascio*, 780 F.3d at 639 (citation omitted). The Fourth Circuit determined that the ALJ failed to explain how he decided which of the claimant's statements to believe and which to discredit, "other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual functional capacity." *Id.* at 640. The court reasoned that the "claimant's pain and residual functional capacity are not separate assessments to be compared with each other." *Id.* at 639. Thus an ALJ is required to consider a claimant's pain as part of the RFC analysis. However, the court went on to say that "the ALJ's error would be harmless if he properly analyzed credibility elsewhere." *Id.* at 639.

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A (nerve root compression is characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine.))

In this case, the Commissioner concedes that the ALJ's decision includes the boilerplate language that warranted remand in *Mascio*. Def. Mem. at 21. The ALJ stated:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce some symptomatology. However, I find that her subjective allegations are not credible to the extent it would preclude the residual functional capacity depicted above.

(Tr. 30). However, the Commissioner contends that the use here was harmless error because the ALJ properly discussed the substantial evidence to find Ms. Combest's allegations less than fully credible. Def. Mem. at 22.

I agree. The ALJ explained her findings on credibility, and supported them with substantial evidence. Specifically, she cited to Ms. Combest's ability to perform daily activities, education level, and mental status examinations, and also relied on her testimony admitting that she could go outside alone, denying the need for an assistive device, and admitting to being able to follow spoken instructions. (Tr. 30-31). The ALJ did not rely on Ms. Combest's sporadic performance of daily activities when evaluating her subjective allegations regarding her mental limitations, but cited to Ms. Combest's twelfth grade education, admission to being able to follow spoken instructions, and attitude and performance during mental status examinations. (Tr. 31). Additionally, the ALJ supported her characterization of Ms. Combest's physical examinations when she stated that Ms. Combest's "range of motion was only mildly reduced and she exhibited 5/5 muscle strength in all four extremities, a normal gait, negative straight leg raises and was able to get on and off the examination table without difficulty." (Tr. 35). Finally, the ALJ also cited an October 2013 doctor's visit during which Ms. Combest indicated that she threw her back out trying to move a washer onto a dolly. (Tr. 33, 35). I note that where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Here, the ALJ adequately supported her findings regarding Ms. Combest's subjective allegations with substantial evidence, thus rendering that particular *Mascio* error harmless.

Related, Ms. Combest's second unsuccessful *Mascio* argument is that the ALJ erred in giving "little weight" to the opinions of Ms. Ketler, Ms. Combest's nurse practitioner. In her decision, the ALJ characterized Ms. Ketler's opinions as "incomplete, internally inconsistent, and inconsistent with the record as a whole." (Tr. 35). Ms. Combest contends that Ms. Ketler's assessment was not incomplete, but "merely illegible," and that the ALJ "cherry-picked" evidence in support of her conclusions. Pl. Mem. at 44. However, the ALJ supported the characterization of Ms. Ketler's opinion as "incomplete" by pointing to her April 26, 2011 assessment of Ms. Combest's exertional limitations, where "the limitations themselves were blacked out," her opinion that Ms. Combest "would need unscheduled breaks" but did not "specify the number or length of said breaks," and the fact that she "did not specify how long the claimant could sit or stand/walk in an eight-hour workday." (Tr. 35). The ALJ deemed Ms. Ketler's opinion that Ms. Combest had marked difficulties maintaining concentration,

persistence, or pace to be internally inconsistent because her notes from October 16, 2013 and October 1, 2013, respectively, indicated that she "displayed a normal mood and affect," and "denied any anxiety or depression." (Tr. 34). The ALJ also deemed Ms. Ketler's opinion of Ms. Combest's physical limitations incomplete and inconsistent because in September 2012, Ms. Ketler "opined the claimant would need to lie down, but [she] could not specify how often or for how long," and yet in November 2013, Ms. Ketler "opined that the claimant would need to lie down three to four times a day." (Tr. 35). Additionally, the ALJ found this opinion inconsistent with Ms. Ketler's own treatment notes, which "indicated that the claimant reported that her pain only moderately limited her activities and that she tried to move a washer in October 2013," as well as the fact that Ms. Ketler herself encouraged the claimant to exercise. *Id.* Finally, the ALJ supported her characterization of Ms. Ketler's opinion as inconsistent with the record as a whole because Ms. Combest's physical examinations were largely unremarkable. *Id.* Accordingly, I find that the ALJ employed proper legal standards in reaching her determination regarding Ms. Ketler's opinion, and her determination is supported by substantial evidence.

Turning to Ms. Combest's successful *Mascio* argument, some additional background is useful. In *Mascio*, the Fourth Circuit determined that remand was also appropriate due to the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 et. seq., pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Each listing therein consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.,* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security

regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio,* 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

At step three in the instant case, the ALJ determined that the claimant's mental impairments did not meet or equal Listing 12.04, affective disorders, or 12.06, anxiety-related disorders, because her impairments do not cause at least two "marked" limitations to satisfy the "paragraph B" criteria. (Tr. 27). In making this finding, the ALJ determined that Ms. Combest had "moderate" difficulties in concentration, persistence, or pace. (Tr. 28). At the hearing, the ALJ posed two hypotheticals to the VE, each including limitations on light work performed during an eight-hour workday, with only occasional interaction with supervisors, and the ability to follow simple and detailed instructions. (Tr. 58-59). In her discussion, the ALJ considered Ms. Combest's testimony reporting difficulties in focusing, concentrating, and following written instructions, her twelfth grade education, her attitude and tests during a medical evaluation, and her admission that she performs activities like grocery shopping and talking to friends. (Tr. 31). The ALJ then concluded that Ms. Combest's RFC was indeed what was posed in one of her hypotheticals to the VE. (Tr. 29).

Ms. Combest argues that this assessment is erroneous under *Mascio* because the ALJ's RFC assessment does not account for her limitations in concentration, persistence, or pace, and does not provide rationale as to why Ms. Combest's moderate difficulties in concentration, persistence, or pace do not translate into additional limitations in her RFC, as required under *Mascio*. Pl. Mem. at 32-33; Pl. Reply at 11.

The Commissioner contends that this case is distinguishable from *Mascio* because the ALJ explained the inconsistency by citing substantial evidence that "supports the ALJ's conclusion that . . . Ms. Combest retained the capacity to understand, remember, and carry out

simple and detailed instructions in a work environment that required her to have no more than occasional interaction with supervisors." Def. Mem. at 20. Specifically, the Commissioner points to the ALJ's reiteration of evidence used to determine Ms. Combest had moderate difficulties in maintaining concentration, persistence, or pace during the RFC analysis, specifically Ms. Combest's testimony that she can follow spoken instructions, Ms. Combest's alertness, attentiveness, and intact memory during mental status examinations, her correct performance of the serial 7s, and her ability to remember 3/3 objects after five minutes. Def. Mem. at 19-20; (Tr. 31, 33-34). The Commissioner also points to the ALJ's reliance on Ms. Combest's self-reported ability to perform personal care tasks independently, care for her mother and daughter, prepare meals, clean, wash laundry, shop for groceries, and talk to friends on the phone, and Ms. Combest's failure to identify any medical evidence that would support greater work-related limitations as proof that "there are no unresolved inconsistencies between the ALJ's step three finding and her RFC determination." *Id*. I disagree.

By distinguishing between the ability to perform a task and the ability to stay on task, *Mascio* makes it clear that the ALJ must account for a claimant's limitation in concentration, persistence, or pace by addressing whether the claimant has the ability to perform tasks for a full workday. *Mascio*, 780 F.3d at 638. Like in *Mascio*, the ALJ in this case determined Ms. Combest could perform light work, but did not address whether she could sustain it for a full workday in light of her moderate limitations in concentration, persistence, or pace. The ALJ credited Ms. Combest's testimony that she struggles with concentration and can only sustain attention for ten minutes, but then posed a hypothetical that involved Ms. Combest performing light work during a full eight-hour workday. The ALJ cited evidence that Ms. Combest could remember three out of three objects after five minutes, but did not address whether she could sustain that memory over an eight-hour workday. Pl. Mem. at 41; (Tr. at 31). The ALJ did not explain this inconsistency. Absent an explanation as to why Ms. Combest's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in her RFC, remand is necessary under *Mascio*.

For the reasons set forth herein, Ms. Combest's Motion for Summary Judgment (ECF No. 16) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 19) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge